# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5026-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

L.M.J.,

     Defendant-Appellant,

and

B.J.R.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF I.M.J.-R.,

     a Minor.

_____

Submitted March 30, 2020 – Decided April 27, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0017-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Carol A. Weil, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Joann Marie Corsetto, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Rachel E. Seidman, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant L.M.J. (the mother) appeals from a June 28, 2019 order terminating her parental rights to her daughter I.M.J.-R (the child), born in 2017, and awarding guardianship to the Division of Child Protection and Permanency (the Division). Judge Rodney Thompson presided over trial, entered judgment, and rendered a forty-six-page written opinion.

The mother raises the following points on appeal:

POINT I
THE TRIAL [JUDGE] ERRED BY TERMINATING THE MOTHER'S PARENTAL RIGHTS BECAUSE ALTERNATIVES TO TERMINATION AND

ADOPTION WERE NOT APPROPRIATELY CONSIDERED BY [THE DIVISION] OR BY THE [JUDGE].

POINT II
THE TRIAL [JUDGE] ERRED BY TERMINATING THE MOTHER'S PARENTAL RIGHTS BECAUSE THE REQUIREMENTS OF PRONG THREE WERE NEVER MET: [THE DIVISION] DID NOT PROVIDE REASONABLE SERVICES TO THE MOTHER.

POINT III
THE TRIAL [JUDGE'S] LEGAL CONCLUSION THAT [THE DIVISION] HAD SATISFIED THE FIRST AND SECOND PRONGS OF THE BEST INTERESTS TEST WAS ERROR.

POINT IV
THE JUDGMENT TERMINATING THE MOTHER'S PARENTAL RIGHTS MUST BE REVERSED BECAUSE [THE DIVISION] FAILED TO PROVE THAT TERMINATION OF PARENTAL RIGHTS WOULD NOT DO MORE HARM THAN GOOD.

We disagree and affirm substantially for the reasons given by the judge.

We begin our discussion with the well-settled legal framework regarding the termination of parental rights. Parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). However, that right is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J.

591, 599 (1986).  At times, a parent's interest must yield to the State's obligation to protect children from harm.  N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992).  To effectuate these concerns, the Legislature created a test to determine when it is in the child's best interest to terminate parental rights.  To terminate parental rights, N.J.S.A. 30:4C-15.1(a) requires the Division to prove four prongs by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from [her] resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the [judge] has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11. The four prongs of the test are "not discrete and separate," but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139 (1993)).

Our review of a family judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "When a biological parent resists termination of his or her parental rights, the [judge's] function is to decide whether that parent has the capacity to eliminate any harm the child may already have suffered, and whether that parent can raise the child without inflicting any further harm." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 87 (App. Div. 2006). The factual findings that support such a judgment "should not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice,' and should be upheld whenever they are 'supported by adequate, substantial and credible evidence.'" In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). "[T]he conclusions that logically flow

from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." R.L., 388 N.J. Super. at 89.

## II.

We now turn to the mother's argument that the judge erred in finding that the Division proved each of the four prongs under the best interests test by clear and convincing evidence. We disagree with her contentions, and as to the four prongs, we affirm substantially for the reasons given by the judge. We add the following.

## A.

The first prong requires the Division to prove that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1). "Although a particularly egregious single harm can trigger the standard, the focus is on the effect of harms arising from the parent-child relationship over time on the child's health and development." K.H.O., 161 N.J. at 348. "[T]he attention and concern of a caring family is 'the most precious of all resources.'" In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999) (quoting A.W., 103 N.J. at 613). "[W]ithdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." Ibid.

The judge found that the child's "safety, health or development has been and will continue to be endangered by the parental relationship with [the mother]." The judge found there were unsanitary living conditions, the mother was unable to care for the child, and the mother suffered from developmental and learning disabilities. The mother fed the child solid food—before the child was able to digest it—while the child was lying on her back, despite being advised that the child could choke. Although the mother contends that she did not actually harm the child, the law is clear that courts need not wait until a child is actually irreparably impaired by the parental relationship. D.M.H., 161 N.J. 383. The mother's cognitive difficulties placed the child at significant risk of harm because she was unable to safely parent the child, which the uncontroverted expert testimony corroborated.

B.

The second prong of the best interests test requires the Division to present clear and convincing evidence that "[t]he parent is . . . unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). The judge must consider whether the parent cured and overcame the initial harm that endangered the child and whether the parent is able to continue the parental relationship

without recurrent harm to the child. K.H.O., 161 N.J. at 348-49. To satisfy its burden, the Division must show the child faces continued harm because the parent is unable or unwilling to remove or overcome the harm. N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 483 (App. Div. 2012). The first and second prongs are related, and often, "evidence that supports one informs and may support the other as part of the comprehensive basis for determining the best interests of the child." D.M.H., 161 N.J. at 379.

"Parental unfitness may also be demonstrated if the parent has failed to provide a 'safe and stable home for the child' and a 'delay in permanent placement' will further harm the child." K.H.O., 161 N.J. at 352 (quoting N.J.S.A. 30:4C-15.1(a)(2)). "Keeping [a] child in limbo, hoping for some long[-]term unification plan, would be a misapplication of the law." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 438 (App. Div. 2001).

As to prong two, the judge found the mother was unwilling and unable to provide the child with a safe and stable home. Over the course of two years, the mother failed to remediate the problems that led to the child's removal. Although the mother visited with the child, the mother failed to demonstrate adequate parenting skills, such as changing the child's diaper, detecting verbal

A-5026-18T25026-18T2

clues, and remaining focused. The evidence demonstrated that there was no indication that the mother could overcome the problems that led to the removal.

## C.

As to prong three, N.J.S.A. 30:4C-15.1(a)(3) requires the Division to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home," and the court to "consider[] alternatives to termination of parental rights." The judge found the Division provided defendants with a plethora of services, which we need not repeat here.

The judge found there were no alternatives to termination of parental rights by ruling out the maternal grandparents, who presented with multiple medical challenges. The Division also provided extensive services to the mother, including transportation to and from supervised visits with the child; psychological, psychiatric, neurological, and bonding evaluations; six hours a week of therapeutic programs and counseling that targeted parenting skills; and one-on-one two-hour parenting classes. Indeed, the mother requested the child remain with her resource parents.

## D.

The fourth prong of the best interests test requires a determination that the termination of parental rights "will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The judge must ask whether "after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents." K.H.O, 161 N.J. at 355. This prong "cannot require a showing that no harm will befall the child as a result of the severing of biological ties." Ibid. "The overriding consideration under this prong remains the child's need for permanency and stability." L.J.D., 428 N.J. Super. at 491-92. "Ultimately, a child has a right to live in a stable, nurturing environment and to have the psychological security that [her] most deeply formed attachments will not be shattered." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 453 (2012). "A child cannot be held prisoner of the rights of others, even those of his or her parents. Children have their own rights, including the right to a permanent, safe and stable placement." N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004).

As to the fourth prong, the judge concluded that termination of parental rights would not do more harm than good, and that the child would not suffer

enduring harm if the judge terminated the parental rights. The judge also found the child was thriving in her current placement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5026-18T25026-18T2